James R. Touchstone, SBN 184584
jrt@jones-mayer.com
Denise L. Rocawich, SBN 232792
dlr@jones-mayer.com
JONES MAYER
3777 North Harbor Boulevard
Fullerton, CA 92835
Telephone: (714) 446-1400
Facsimile: (714) 446-1448

Attorneys for Defendant
CITY OF ONTARIO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISADORE WEBB, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF ONTARIO, and DOES 1 through 10 Inclusive,<br><br>Defendants. | Case No.: CV21-00341 JWH (SP)<br>Judge: *Hon. Judge John W. Holcomb*<br><br>**DEFENDANT CITY OF ONTARIO'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT OF ISSUES; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed and lodged concurrently herewith:<br>(1) Joint Statement of Undisputed Facts;<br>(2) Joint Exhibit;<br>(3) Request for Judicial Notice<br>(4) [PROPOSED] Judgment.]<br><br>Date: January 20, 2023<br>Time: 9:00 a.m.<br>Crtm: 9D |

## NOTICE OF MOTION FOR SUMMARY JUDGMENT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on January 20, 2023 at 9:00 a.m. in Courtroom 9D of the above-entitled court, located at the Ronald Reagan Federal Building and U.S. Courthouse, 411 W. 4th Street, Santa Ana, California 92701-4516, 9th Floor or as soon thereafter as the matter may be heard, Defendant, City of Ontario, will and hereby does move for summary judgment on Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 56 on the ground that there is no genuine issue of material fact and Ontario is entitled to judgment as a matter of law.  In the alternative, if the Court finds a genuine issue of material fact prevents the entry of summary judgment for Ontario, Ontario moves under Federal Rule of Civil Procedure 56(d) for an Order specifying the facts from the proposed Statement of Uncontroverted Facts that appear without substantial controversy in order to narrow the issues for trial.

The Motion is based on this Notice of Motion and Motion and attached Memorandum of Points and Authorities, the Declaration of Sergeant Melissa Ramirez filed concurrently herewith and Exhibits thereto, the [Proposed] Statement of Uncontroverted Facts and Conclusions of Law filed concurrently herewith, the Request for Judicial Notice filed concurrently herewith, the file and records in this case, and any further argument or evidence the Court deems fit to receive at any hearing on this Motion. This Motion is filed after the conference of counsel required by Local Rule 7-3.

Dated: December 15, 2022                    JONES & MAYER

By: */s/ Denise Lynch Rocawich*
JAMES R. TOUCHSTONE
DENISE L. ROCAWICH
Attorneys for City of Ontario

\

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... 5

I.      INTRODUCTION ...................................................................... 8

II.     LEGAL STANDARD ON MOTION FOR SUMMARY
        JUDGMENT ............................................................................ 8

III.    RELEVANT FACTS AND ALLEGATIONS IN THE
        COMPLAINT ......................................................................... 10

IV.     NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO
        WEBB'S 42 U.S.C. § 1983 CLAIM AGAINST THE CITY ...................... 12

        A.      There Can Be No Monell Liability Because Any Underlying
                Constitutional Claim is Barred by Webb's Guilty Pleas to Penal
                Code  Sections 245(c) and 148(a) Pursuant to the Doctrine Set
                Forth in Heck v. Humphrey .................................................. 12

        B.      Webb Cannot Establish Monell Liability Even Assuming Heck
                Does Not Bar Webb's Claim Against the City .......................... 15

                1.      There Is No Allegation That The Complained of Torts
                        Were Committed By An Official With Final Policy
                        Making Authority ........................................................ 16

                2.      There Is No Allegation That The City Ratified The Use
                        Of Excessive Force ...................................................... 16

                3.      There is No Allegation That The City Has A Policy Of
                        Deliberate Indifference In Training, Supervision And/or
                        Hiring ........................................................................ 16

                        a.      Ontario Officers Are Adequately Trained and Any
                                Training Deficiencies Are Not The Result of
                                Deliberate Indifference ...................................... 17

                        b.      Ontario Officers Are Adequately Screened During
                                The Hiring Process ............................................ 20

4.  The City Does Not Have A Formally Promulgated Policy
    or Regulation That Permits, Condones Or Ratifies The Use
    of Excessive Force ................................................................................. 21

5.  There Is No Evidence That The City Had A Custom Or
    Practice Of Permitting or Condoning The Use of Excessive
    Force ...................................................................................................... 23

V.  CONCLUSION ............................................................................................. 25

MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT OF ISSUES

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

<u>Adickes v. S. H. Kress & Co.</u>,
  398 U.S. 144, 90 S. Ct. 1598 (1970) ................................................................. 23

<u>Anderson v. Liberty Lobby, Inc.</u>,
  477 U.S. 242, 106 S.Ct. 2505 (1986) ............................................................. 8, 9

<u>Ashley v. City & Cty. of S.F.</u>,
  2013 U.S. Dist. LEXIS 168271 (N.D. Cal. Nov. 26, 2013) ......................... 10, 11

<u>Board of the County Commissioners v. Brown</u>,
  520 U.S. 397, 117 S. Ct. 1382 (1997) .......................................................... 15, 20

<u>Celotex Corp. v. Catrett</u>,
  477 U.S. 317, 106 S. Ct. 2548 (1986) ........................................................ 8, 9, 23

<u>Christie v. Iopa</u>,
  176 F. 3d 1231 (9th Cir. 1999) ................................................................ 16, 17, 24

<u>City of Canton v. Harris</u>,
  489 U.S. 378, 109 S. Ct. 1197 (1989) .......................................................... 15, 20

<u>Coleman v. Quaker Oats Co.</u>,
  232 F.3d 1271 (9th Cir. 2000) ............................................................................. 9

<u>Crawford v. Van Buren Cty, Ark.</u>,
  678 F.3d 666 (8th Cir. 2012) ....................................................................... 12, 14

<u>Gillette v. Delmore</u>,
  979 F.2d 1342 (9th Cir. 1992) ........................................................................... 15

<u>Hanon v. Data Products Corp.</u>,
  976 F.2d 497 (9th Cir. 1992) .............................................................................. 9

<u>Heck v. Humphrey</u>,
  512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994)
  .................................................................................................... 12, 13, 14, 15

<u>Jeffers v. Gomez</u>,
  267 F.3d 895 (9th Cir. 2001) .......................................................................... 9, 23

-5-

La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest,
    624 F.3d 1083 (9th Cir. 2010) ...................................................................... 9

Margolis v. Ryan,
    140 F.3d 850 (9th Cir. 1998) ........................................................................ 8

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
    475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ............................ 9

Merritt v. County of Los Angeles,
    875 F.2d 765 (9th Cir. 1989) ...................................................................... 17

Monell v. New York Dept. of Social Services,
    436 U.S. 658, 98 S.Ct. 2018 (1978) ..................................................... *passim*

Pembaur v. City of Cincinnati,
    475 U.S. 469 106 S. Ct. 1292 (U.S. 1986) ................................................. 15

Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.,
    707 F.2d 1030 (9th Cir. 1983) ...................................................................... 8

Rivera v. City of Santa Ana,
    2011 U.S. Dist. LEXIS 17535 (C.D. Cal. Feb. 18, 2011) ........................... 9

Segal v. City of New York,
    459 F.3d 207 (2d Cir. 2006) ....................................................................... 12

Smith v. City of Hemet,
    394 F.3d 689 (9th Cir. 2005) [en banc] ...................................................... 14

Ting v. United States,
    927 F.2d 1504 (9th Cir. 1991) .................................................................... 17

Wasco Products, Inc. v. Southwall Technologies, Inc.,
    435 F.3d 989 (9th Cir. 2006) ...................................................................... 10

Webb v. Sloan,
    330 F.3d 1158 ............................................................................................. 16

Wilson v. City of Bakersfield,
    2017 U.S. Dist. LEXIS 201009 (E.D. Cal. Dec. 6, 2017) ............................ 9

**State Cases**

People v. Curtis,
     70 Cal. 2d 347 (1969) ................................................................. 14

People v. Olguin,
     119 Cal. App. 3d 39 (1981) ......................................................... 14

People v. White,
     101 Cal.App.3d 161 (1980) ......................................................... 14

**Federal Statutes**

28 U.S.C. § 2254 ................................................................................. 13

42 U.S.C. § 1983 ........................................................................... *passim*

**State Statutes**

California Penal Code § 245(a) ............................................... 11, 14

California Penal Code § 245(c) ........................................... 11, 13, 14

Penal Code § 148 .......................................................................... 14

Penal Code § 148(a) ................................................................ 12, 14

**Rules**

Fed. R. Civ. P. 56(c) ........................................................................ 8

Fed. R. Civ. P. 56(e) ........................................................................ 9

Fed. R. Civ. P. 56(e)(2) ............................................................... 9, 23

**Constitutional Provisions**

Fourth Amendment ..................................................................... 18, 23

**Other Authorities**

William W Schwarzer, A. Wallace Tashima & James M. Wagstaffe,
     California Practice Guide: Federal Civil Procedure Before Trial §
     14:144 ........................................................................................ 9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff, Isadore Webb, asserts one claim against the City of Ontario alleging an unconstitutional policy, practice and/or custom of using excessive force via militarized police vehicles, assault weapons, and police dogs. The undisputed facts and case law set forth in this Motion, however, demonstrate that Webb's claim against the City of Ontario must fail as a matter of law.

## II.   LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT

A Motion for Summary Judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10 (1986).  It is the moving party's burden to show it is entitled to summary judgment — that "under the governing law, there can be but one reasonable conclusion as to the verdict."  Anderson, 477 U.S. at 250; See also Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998); Retail Clerks Union Local 648 v. Hub Pharmacy, Inc., 707 F.2d 1030, 1033 (9th Cir. 1983).

The moving party's initial burden is to identify the elements of the claim or defense and the evidence that it believes demonstrates the absence of an issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53 (1986).  Where the non-moving party has the burden of proof at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case.  Id., 477 U.S. at 325. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case.  Id.  The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing as to any one of the elements of the case with respect to which the non-moving party has the burden of proof at trial.  Id., 477 U.S. at 322.

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial.  Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256.  The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial.  Celotex, 477 U.S. at 322, Anderson, 477 U.S. at 252, see also William W Schwarzer, A. Wallace Tashima & James M. Wagstaffe, California Practice Guide: Federal Civil Procedure Before Trial § 14:144.  Even though evidence on summary judgment must be viewed in light most favorable to the non-moving party, plaintiffs must do more than simply make allegations that defendants acted improperly in order to survive summary judgment. Fed. R. Civ. P. 56(e)(2); Jeffers v. Gomez, 267 F.3d 895, 907 (9th Cir. 2001). The non-moving party must make this showing with admissible evidence. See Celotex, 477 U.S. at 324.  Where the record taken as a whole could not lead a rational trier of fact to find for the moving party, there is no "genuine issue for trial" and summary judgment is compelled.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); Hanon v. Data Products Corp., 976 F.2d 497, 500 (9th Cir. 1992).

Additionally, on a motion for summary judgment, a plaintiffs' allegations and theories of liability are confined to those found in the operative complaint. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292 (9th Cir. 2000); see also Rivera v. City of Santa Ana, 2011 U.S. Dist. LEXIS 17535, at *14-15 n.3 (C.D. Cal. Feb. 18, 2011). A plaintiff "may not effectively amend [his] Complaint by raising a new theory . . . in [his] response to a motion for summary judgment". La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest, 624 F.3d 1083, 1089 (9th Cir. 2010). "'The issues on summary judgment are framed by the complaint' and 'a plaintiff cannot oppose summary judgment based on a new theory of liability.'" Wilson v. City of Bakersfield, 2017 U.S. Dist. LEXIS 201009, at *42-43 (E.D. Cal. Dec. 6, 2017) citing Rodriguez v. Countrywide Homes, 668 F. Supp. 2d 1239,

1246 (E.D. Cal. 2009). "Simply put, summary judgment is not a procedural second

chance to flesh out inadequate pleadings." <u>Wasco Products, Inc. v. Southwall</u>

<u>Technologies, Inc.</u>, 435 F.3d 989, 992 (9th Cir. 2006); <u>see also</u> <u>Ashley v. City &</u>

<u>Cty. of S.F.</u>, 2013 U.S. Dist. LEXIS 168271, at *23 (N.D. Cal. Nov. 26, 2013).

## III.   RELEVANT FACTS AND ALLEGATIONS IN THE COMPLAINT

Webb alleges that on September 12th, 2019, he was a long-haul truck driver.

Complaint ("Compl.) at ¶ 3. Webb alleges that at approximately 5 p.m. on that

date, he was in the parking lot of a TA West Truck Stop in the City of Ontario

having just delivered a load of cargo and was in the process of parking his vehicle.

<u>Id.</u> at ¶ 9. Webb alleges that as he drove his vehicle, he engaged in what is

colloquially known in the trucking community as "clowning." <u>Id.</u> Webb alleges

that clowning is when a truck driver, newly free from the heavy load of cargo he is

just delivered, drives with a sense of exuberance. <u>Id.</u> As such, Webb alleges he was

driving erratically in the parking lot. <u>Id.</u> Webb alleges that observers from the truck

stop thought he was intoxicated, which he was not. <u>Id.</u>

Webb alleges that he suddenly saw an Ontario police vehicle in front of his

truck. <u>Id.</u> at ¶ 10. He alleges that, because his rearview mirror was still in the

position that it must lawfully be in while he is hauling loads of cargo, the rearview

mirror was not position in a manner that would have allowed Webb to see the

police vehicle that had parked directly behind him. <u>Id.</u> Webb alleges that

immediately after he saw the police vehicle in front of him, he began the elaborate

set of maneuvers that are necessary to put his vehicle in park. <u>Id.</u> at ¶  11. Webb

alleges his vehicle is equipped with air brakes, so many steps are needed in order

for him to change gears. <u>Id.</u> Webb alleges that as he was engaged in the process of

putting his vehicle in park, several police officers yelled at him demanding that he

exit his vehicle. <u>Id.</u> Webb alleges that he asked why he was being detained but

received no answer from the officers. <u>Id.</u>

Webb alleges that he suddenly heard several gunshots and quickly realized that the officers were shooting rubber bullets at his vehicle. Id. at ¶ 12. Webb alleges he immediately placed his hands on his head and remained seated in his vehicle. Id. Webb alleges that he again asked why he was being detained but received no answer. Id. Webb alleges he heard more gunshots and watched as officers fired live rounds at his vehicle, shattering the glass on both his driver's side and his passenger side windows. Id. Webb alleges that the broken glass hit Webb in the head, ear, and right arm causing deep cuts. Id. Webb alleges that immediately thereafter, the officers fired two canisters of tear gas into the cab of Webb's vehicle. Id. at ¶ 13.

Webb alleges that he opened the driver's side door of his vehicle to breathe in some fresh air. Id. Webb alleges he had just opened the driver side door a crack when the officers lifted a German Shepherd police dog into his vehicle. Id. Webb alleges that the police dog attacked him aiming for his face. Id. Webb alleges he raised his left arm to shield his face from the attack, and that the dog plunged his teeth deep into Webb's left arm. Id. Webb alleges that the dog then pulled so hard at Webb's left arm that his arm was dislocated from the socket. Id. Webb alleges that the officers then discharged a beanbag shotgun at him, inflicting wounds to the back of his left thigh, the side of his right thigh, and his hand. Id. at ¶ 14. Webb alleges that the officers tackled him down to the ground, striking and/or kicking him and knocking loose some of his teeth. Id. Webb alleges the officers then applying excessive physical force to his left wrist, breaking it. Id. Plaintiff alleges that at no time was he committing any criminal offense and that he was not intoxicated by any drug or alcohol. Id.

Webb plead guilty and thus was convicted of two felony counts of violation of California Penal Code section 245(c) – Assault with a deadly weapon on a police officer by a means likely to produce great bodily injury, one felony count of violation of California Penal Code section 245(a) -- Assault with a deadly

weapon by a means likely to produce great bodily injury, and one misdemeanor
count of violation of Penal Code section 148(a) -- willfully resisting, delaying, or
obstructing a police officer in the performance of his duties. Joint Statement of
Undisputed Facts and Genuine Disputes ("Joint Statement") filed concurrently
herewith at 1.

Webb filed a Complaint for damages against the City of Ontario on
February 25, 2021 alleging two claims for relief including one claim against the
City for a violation of 42 U.S.C. Section 1983 [DKT 1]. Specifically, Webb alleges
that the City maintained an unconstitutional policy, practice and custom of
unlawfully detaining persons and using excessive force against them.

## IV.   NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO WEBB'S 42 U.S.C. § 1983 CLAIM AGAINST THE CITY

In Webb's Second Claim for Relief, the only claim against the City of
Ontario, Webb alleges a violation of 42 U.S.C. § 1983 based on an
unconstitutional policy, practice or custom. Compl. at ¶¶ 26-35.

### A.   There Can Be No *Monell* Liability Because Any Underlying Constitutional Claim is Barred by Webb's Guilty Pleas to Penal Code Sections 245(c) and 148(a) Pursuant to the Doctrine Set Forth in *Heck v. Humphrey*

First and foremost, municipal liability under Monell requires an underlying
constitutional violation. See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir.
2006) ["Because the district court properly found no underlying constitutional
violation, its decision not to address the municipal defendants' liability under
Monell was entirely correct."] Here, there can be no Monell liability because any
underlying Constitutional claim is barred by Webb's guilty pleas to violations of
California Penal Code sections 245(c) and 148(a). See Crawford v. Van Buren Cty,

1    <u>Ark.</u>, 678 F.3d 666, 669-70 (8th Cir. 2012) [barring claims against municipality
2    pursuant to <u>Heck</u>].

3       In 1994, the United States Supreme Court decided the case of <u>Heck v.</u>
4    <u>Humphrey</u>, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994).  The issue
5    for the Court's determination in the case was whether a state prisoner, whose
6    conviction was still valid, could bring a lawsuit under 42 U.S.C. § 1983 for alleged
7    violations of his civil rights that would have the effect of challenging the validity
8    of his underlying conviction or sentence.  <u>Id.</u>, 512 U.S. at 478.  The Court held that
9    in order to recover damages for alleged actions whose unlawfulness would render
10    a conviction or sentence invalid, "a § 1983 plaintiff must first prove that the
11    conviction or sentence has been reversed on direct appeal, expunged by executive
12    order, declared invalid by a state tribunal authorized to make such a determination,
13    or called into question by a federal court's issuance of a writ of habeas corpus, 28
14    U.S.C. § 2254." <u>Id.</u>, 512 U.S. at 486-87.

15       The Court further held that a claim for damages bearing that relationship to
16    a conviction or sentence that has not been so invalidated <u>is not cognizable under</u>
17    <u>Section 1983</u>.  <u>Id.</u>, 512 U.S. at 487 [emphasis added]. Importantly, the Court
18    provided an example of the application of its holding that is pertinent to this case.
19    The Court stated its decision barred a Section 1983 suit brought by a plaintiff who
20    was convicted of resisting arrest, defined as intentionally preventing a peace
21    officer from effecting a lawful arrest, for unreasonable seizure.  <u>Id.</u>, 512 U.S. at
22    487, fn. 6.  The Court noted that a plaintiff bringing a suit of this nature would
23    have to negate an element of the underlying defense for which he had been
24    convicted.  <u>Id.</u>

25       The doctrine set forth in <u>Heck v. Humphrey</u> is applicable in this case and
26    bars any Section 1983 claim against individual Ontario officers. Webb plead
27    guilty and thus was convicted of two felony counts of violation of California
28    Penal Code section 245(c) – Assault with a deadly weapon on a police officer

engaged in the performance of his duties by a means likely to produce great bodily injury, one felony count of violation of California Penal Code section 245(a) -- Assault with a deadly weapon by a means likely to produce great bodily injury, and one misdemeanor count of violation of Penal Code section 148(a) -- willfully resisting, delaying, or obstructing a police officer in the performance of his duties. Joint Statement at 1.

Pursuant to California law, a peace officer cannot be engaged in the performance of his or her duties unless the officer was using appropriate force during the course of effecting the arrest.  See People v. White, 101 Cal.App.3d 161, 167 (1980); see also Smith v. City of Hemet, 394 F.3d 689, 695-96 (9th Cir. 2005) [en banc].  The arrest would otherwise be unlawful and the defendant could only be convicted of the lesser charge of simple battery.  See People v. Curtis, 70 Cal. 2d 347, 354-57 (1969); People v. Olguin, 119 Cal. App. 3d 39, 45-46 (1981). Accordingly, a person cannot be convicted of violations of Penal Code sections 245(c) or Penal Code section 148 unless an officer was, by necessity, using an appropriate level of force to effect the arrest.  Here, Webb stipulated that the preliminary hearing transcript provided a factual basis for his guilty pleas. Joint Statement at 2. The preliminary hearing transcript establishes that each use of force against Webb was done in the performance of the Ontario Officers' duties including the ultimate use of the police K9 -- during which use of force Webb continued to resist and, in fact, injured the K9. Joint Statement at 3.

Because Webb's success on any Section 1983 claim against Ontario Officers would necessarily negate an essential element of the underlying crimes, the doctrine enunciated in Heck v. Humphrey bars any Section 1983 claim. See Heck, 512 U.S. at 487.  Because there is no underlying Constitutional violation, there can be no Monell liability against the City. See Crawford, 678 F.3d at 669-70. Thus, summary judgment is appropriate.

**B.**     **Webb Cannot Establish *Monell* Liability Even Assuming *Heck* Does Not Bar Webb's Claim Against the City**

A government entity cannot be held liable for a constitutional violation under 42 U.S.C. § 1983 for the action of one of its employees on the basis of *respondeat superior* liability. Monell v. New York Dept. of Social Services, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036 (1978). As stated by the Supreme Court in Board of the County Commissioners v. Brown, 520 U.S. 397, 117 S. Ct. 1382 (1997): "Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights." Brown, 520 U.S. at 415.

For these reasons, a government entity may only be held liable under § 1983 if the plaintiff proves: (1) The tort complained of was committed by an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy; See Pembaur v. City of Cincinnati, 475 U.S. 469, 480 106 S. Ct. 1292, 1298 (U.S. 1986); Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992); *or* (2) An official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it; See Gillette, 979 F.2d at 1346; *or* (3) A policy of deliberate indifference in training, supervision and/or hiring. See City of Canton v. Harris, 489 U.S. 378, 109 S. Ct. 1197 (1989); Brown, 520 U.S. 397; *or* (4) The existence of a formally promulgated municipal policy or regulation pursuant to which the employee was acting; See Monell 436 U.S. at 691; *or* (5) The existence of a well-settled municipal custom or practice of permitting or condoning unconstitutional behavior; See Monell, 436 U.S. at 691.

To prevail on any of these grounds, Webb must show not only that such alleged polices exist, but also a "direct causal link" between the alleged custom or policy and the constitutional violation. See Brown, 520 U.S. at 404. The "'official policy' requirement is intended to distinguish acts of the *municipality* from acts of

the *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." Webb v. Sloan, 330 F.3d 1158, 1235 (*quoting* Pembaur, 475 U.S. at 479-80 [emphasis in original].) Webb has no evidence that would establish any of the above basis for liability on the part of the City.

### 1. **There Is No Allegation That The Complained of Torts Were Committed By An Official With Final Policy Making Authority**

Webb has identified the alleged tortfeasors in his Complaint only as DOES 1 through 10 or "DOE Officers". There are no allegations in the Complaint that any of the alleged tortfeasors are officials with final policy-making authority. Accordingly, there can be no liability on that ground.

### 2. **There Is No Allegation That The City Ratified The Use Of Excessive Force**

To impose Monell liability on the City on the basis of ratification of the challenged conduct, Webb must prove that the City both knew of and specifically approved of the alleged excessive force. See Christie v. Iopa, 176 F. 3d 1231, 1239 (9th Cir. 1999). There are no allegations in the Complaint that the City ratified the alleged use of excessive force much less any evidence that the City specifically approved of the alleged excessive force. Accordingly, there can be no liability on that ground.

### 3. **There is No Allegation That The City Has A Policy Of Deliberate Indifference In Training, Supervision And/or Hiring**

As with the two basis of Monell liability discussed above, Webb's

Complaint does not contain any allegations that the City has a policy of deliberate indifference in training, hiring or supervision. Accordingly, there can be no liability on that ground. However, even assuming arguendo, that the Court reads Webb's Complaint as encompassing a claim under this theory of liability, summary judgment is appropriate nonetheless because the City does not have a policy of deliberate indifference in training, supervision and/or hiring.

### a.   Ontario Officers Are Adequately Trained and Any Training Deficiencies Are Not The Result of Deliberate Indifference

A cognizable "failure-to-train" claim requires Webb to prove: (1) The training provided was inadequate; (2) Such inadequate training resulted from the municipality's deliberate indifference to the rights of persons the police may come into contact with; and (3) Such inadequate training manifesting a deliberate indifference "actually caused" the constitutional deprivation at issue.  See Merritt v. County of Los Angeles, 875 F.2d 765, 769-770 (9th Cir. 1989) *citing* Canton, 489 U.S. 378. "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a *known* or *obvious* consequence of his action." Christie, 176 F.3d at p. 1240 *quoting,* Brown, 520 U.S. at p.  410 [emphasis in original]. Simply showing that officers could have been better trained is not enough nor is a single incident of improper behavior sufficient to establish a policy of inadequate training. See Ting v. United States, 927 F.2d 1504, 1512 (9th Cir. 1991) and Merritt, 875 F.2d at p. 769-70. Webb has no evidence whatsoever of inadequate training much less of inadequate training manifesting a deliberate indifference.

The Ontario Police Department Policy Manual (the "Policy Manual") sets forth the policies, regulations and procedures of the Ontario Police Department ("OPD"). Joint Statement at 4. All OPD Officers are required to be familiar with

and comply with the policies, regulations and procedures in the Policy Manual. Joint Statement at 5. The policies and regulations found in the Policy Manual supplement the United States and California Constitutions as well as any statutory authority that governs peace officers. Joint Statement at 6. OPD Officers are required to comply with all relevant statutory authority as well as relevant caselaw from state and federal courts. Joint Statement at 7.

Prior to being hired, all OPD Officers must graduate from a police academy that is approved by the Commission on Peace Officer Standards and Training ("POST"). Joint Statement at 8. POST was established by the Legislature and sets the minimum selection and training standards for California law enforcement. Joint Statement at 9. In the academy, law enforcement trainees receive training on issues related to the use of reasonable force and laws of arrest. Joint Statement at 10. All OPD Officers who are hired by OPD go through a probationary period. Joint Statement at 11.  Per Policy Section 436 et seq., newly hired OPD Officers go through a POST approved Field Training Officer ("FTO") program. Joint Statement at 12. Further, OPD has a Field Training Manual which serves as a training guide for new officers who are assigned to the FTO program. Joint Statement at 13. OPD requires strict adherence to the policies and procedures of the FTO program. Joint Statement at 14.

In FTO training, all new officers are teamed with an experienced officer who instructs and evaluates the trainees on all aspects of police work including use of force and laws of arrest. Joint Statement at 15. Part of the FTO training program includes ensuring that trainees are familiar with the Policy Manual. Joint Statement at 16. The OPD Policy Manual does not condone or permit violations of the Fourth Amendment.  Joint Statement at 17. The policies and procedures within the Policy Manual meet or exceed that which is required by POST, by state and federal case law and by state and federal statutory law. Id.

In addition to the FTO program, Section 208 of the Policy Manual requires

1   on-going training of OPD officers and requires the Training Sergeant to develop,
2   maintain and update annually a training plan whereby officers are trained on
3   legislative changes and case law, state mandated training and critical issues
4   training. Joint Statement at 18. Some "critical issues" on which OPD Officers were
5   trained and tested before the incident involving Webb include laws of arrest, use of
6   less lethal force, use of lethal or deadly force, and search and seizures of
7   persons/4th Amendment law and, where applicable, use of police canines. Joint
8   Statement at 19. Additionally, K-9 Handlers assigned to the Ontario Police
9   Department's Canine  Unit undergo extensive and on-going training specific to
10  pre-search considerations and procedures, deployment of their K9, and post-
11  apprehension investigation as well as case law specific to K9 use of force. Joint
12  Statement at 20.

13       Finally, pursuant to Policy Section 408 et seq., members of the Ontario
14  SWAT team are required to successfully complete the POST-certified Basic
15  SWAT Course or its equivalent prior to being deployed, and must complete update
16  or refresher training as certified by POST, or its equivalent, every 24 months. Joint
17  Statement at 21. The policies and procedures found in Sections 208 and 408 of the
18  Policy Manual and the policies and procedures found in the Field Training Manual
19  and various K9 course materials ensure Ontario Officers are adequately trained.
20  Joint Statement at 22.

21       OPD's training of its officers meets or exceeds that which is required by
22  POST, by state and federal case law and by state and federal statutory law. Joint
23  Statement at 23. The above-mentioned training program and other training
24  requirements were in place at the time of the incident involving Webb. Joint
25  Statement at 24. Therefore, Webb cannot show inadequacy. Further, even if Webb
26  were to find a hole in the extensive training of OPD Officers, Webb has zero
27  evidence that such a hole was cause by the deliberate indifference of the City.
28  Finally, Webb has zero evidence that such an inadequacy was the actual cause of

his specific alleged injury. Accordingly, summary judgment is proper.

### b. Ontario Officers Are Adequately Screened During The Hiring Process

In <u>Brown</u>, 520 U.S. 397, the Supreme Court adopted the <u>Canton</u> "deliberate indifference" standard for Section 1983 municipal liability claims based on inadequate screening of employees. <u>See</u> <u>Brown</u>, 520 U.S. at p. 410. The Court made clear, however, that the fault and causation standards for screening cases are applied even more stringently than in training cases. <u>Id.</u> These standards require a plaintiff to demonstrate that the hired officer was "highly likely to inflict the *particular* injury at issue." <u>Brown</u>, 520 U.S. at p. 412 [emphasis in original]. Webb cannot meet this high burden.

Prior to being hired by OPD, all applicants must take and pass an oral interview, a medical examination, a background investigation, a psychological evaluation and a polygraph exam. Joint Statement at 25. Additionally, OPD requires applicants to display the "10 Job Dimensions" established by POST as a professional standard in background investigations and a specific section the Policy Manual, Section 1000, addresses the standards and qualifications for recruitment. Joint Statement at 26 and 27.

OPD's standards and qualifications for recruitment of officers and screening process of new hires meet or exceed that which is required by POST, by state and federal case law and by state and federal statutory law. Joint Statement at 28. The above-mentioned screening process employed by the City was in place at the time of the incident involving Webb. Joint Statement at 29. Webb, who has not identified the alleged offending officers, has no evidence that one or more of them was hired by the City with the knowledge that it was highly likely to inflict the particular injury he alleges to have suffered. Accordingly, Webb cannot survive summary judgment with regard to any claim of inadequate screening.

### 4. The City Does Not Have A Formally Promulgated Policy or Regulation That Permits, Condones Or Ratifies The Use of Excessive Force

Webb has alleged that the City maintained and enforced an unconstitutional policy. See Compl. at ¶ 27. It is unclear whether Webb is alleging the existence of a *formally promulgated* municipal policy or regulation. Regardless, liability cannot be imposed on that particular ground because the City does not have a formally promulgated policy or regulation permitting, condoning or ratifying the use of excessive force or other constitutional violations by its officers. Joint Statement at 30.

Policy Section 300, and the subsections therein, which was in force at the time of the incident involving Webb, addresses the use of force by OPD Officers. Joint Statement at 31. Policy Section 300 does not permit or condone the use of excessive force, and specifically requires that only reasonably necessary force may be used by OPD Officers based upon the totality of the circumstances confronting them. Joint Statement at 32 and 33. In a non-exhaustive list, Section 300.3.2 requires that OPD Officers take a number of factors into consideration including the immediacy of the threat, a subject's mental state, the degree of resistance by the suspect, the availability of other options and the seriousness of the suspected offense among others. Joint Statement at 34. Section 300.5 requires OPD Officers to report any use of force and report certain uses of force to a supervisor. Joint Statement at 35.

Section 318 of the OPD Policy Manual (the Canine Policy), which was in force at the time of the incident involving Webb, addresses the use of police service dogs by officers. Joint Statement at 36. Section 318 does not permit, condone or direct the use of excessive force. Joint Statement at 37. Instead, the Canine Policy, in conjunction with Section 300, the Department's Use of Force Policy, requires that a police service dog only be used to search for and apprehend

an individual when objectively reasonable under the totality of the circumstances confronting the handling officer. Joint Statement at 38. The Canine Policy specifically limits the use of police service dogs to search for or apprehend an individual situations in which a suspect has either committed or threatened to commit a serious offense. Joint Statement at 39. The Canine Policy specifically requires that the canine handler or supervisor on scene carefully consider all pertinent information reasonably available at the time the canine is used to search for or apprehend an individual including the suspect's age, the nature of the suspected offense, potential danger to the public and/or other officers at the scene if the canine is released, the degree of resistance or threatened resistance the suspect has shown, the potential for escape or flight if the canine is not utilized, and the potential for injury to the public or other officers if the canine is not utilized. Joint Statement at 40. The Canine Policy specifically requires that, except in limited situations where not feasible, a clearly audible warning shall be given prior to the canine being released to apprehend an individual. Joint Statement at 41.

Section 308 of the OPD Policy Manual (the Control Devices Policy), which was in force at the time of the incident involving Webb, addresses the use of impact weapons and chemical agents by OPD Officers. Joint Statement at 42. Section 308 does not permit, condone or direct the use of excessive force. Joint Statement at 43. Instead, the Control Devices Policy, in conjunction with Section 300, the Department's Use of Force Policy, requires that control devices only be used to apprehend an individual when objectively reasonable under the totality of the circumstances confronting the handling officer. Joint Statement at 44. The Control Devices Policy specifically limits the use control weapons to control suspects who are violent or who demonstrate the intent to be violent. Joint Statement 45.

The City's use of force policies, specifically Policy Sections 300, 318 and

308 of the Policy Manual, meet or exceed that which is required by POST, by state and federal case law and by state and federal statutory law. Joint Statement at 46. As discussed in more detail below, failing to comply with the policies, regulations and procedures of the City, including the Use of Force Policy, can subject an officer to the disciplinary process. Joint Statement at 47. Accordingly, there can be no liability on the part of the City on this ground and summary judgment is appropriate.

## 5.   There Is No Evidence That The City Had A Custom Or Practice Of Permitting or Condoning The Use of Excessive Force

In <u>Monell</u>, the Supreme Court recognized that a municipal practice may be so persistent and widespread that it constitutes a custom or usage having the force of law even though it has not a formally promulgated policy. <u>See</u> <u>Monell</u>, 436 U.S. at 691; <u>See also</u> <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 167-68, 90 S. Ct. 1598, 1613-14 (1970). Webb alleges that the City maintained and enforced a custom, policy and practice of permitting Fourth Amendment violations. <u>See</u> Compl. ¶ 27.  In order to survive summary judgment, Webb must do more than simply make allegations that the City acted improperly. Fed. R. Civ. P. 56(e)(2); <u>Jeffers</u>, 267 F.3d at 907. Webb must make a showing with *admissible* evidence. <u>See</u> <u>Celotex</u>, 477 U.S. at 324. The allegations of the Complaint are simply not sufficient to prove a violation of Section 1983 by the City. Here, Webb has no evidence whatsoever to support his allegation that the City has a custom or practice of permitting or condoning the use of excessive force.

"Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." <u>Trevino</u>, 99 F.3d at 918 [citations omitted]. The law does not permit the inference of a longstanding custom or practice from a single incident or even

1   sporadic incidents. See Christie, 176 F.3d at 1235. More importantly, the City has

2   no custom, policy or practice of permitting, encouraging  or condoning the use of

3   excessive force or other types of misconduct by its officers. Joint Statement at 48.

4       As discussed above, OPD Officers are required to comply with the policies

5   and procedures in the Policy Manual and with all relevant statutory authority as

6   well as relevant case law from state and federal courts. Joint Statement at 5 and 7.

7   The City  has multiple policies and procedures providing for the investigation of

8   possible misconduct by its officers that expressly include provisions regarding the

9   discipline of officers in appropriate circumstances. Section 1019 of the Policy

10  Manual provides guidelines for the reporting, investigation and disposition of

11  complaints regarding the conduct of OPD Officers and provides that such

12  complaints are to be thoroughly investigated. Joint Statement at 49.

13      Section 340 of the Policy Manual also provides non-exhaustive examples of

14  conduct for which OPD Officers may be disciplined including policy violations as

15  well as for criminal conduct occurring on duty and off-duty occurring both within

16  and outside the City jurisdiction. Joint Statement at 50. The City's policies and

17  procedures providing for the investigation of possible misconduct by its officers

18  and the discipline of officers meet or exceed that which is required by POST, by

19  state and federal case law and by state and federal statutory law and ensure that

20  possible misconduct is thoroughly investigated and that offending officers are

21  appropriately disciplined. Joint Statement at 51.

22      In short, the City undisputedly had (and continues to have) policies and

23  procedures in place for investigating possible misconduct of its officers and

24  undisputedly had policies and procedures in place for the imposition of discipline

25  against offending officers. Indeed, since the year 2017, the City has sustained

26  approximately thirty-six internal investigations of officer misconduct including

27  two citizen complaints. Joint Statement at 52. Additionally during that time, the

28  City has disciplined 2 officers for the use of excessive force. Joint Statement at 53.

-24-

This would not be the case if the City had a custom, policy or practice of permitting, encouraging  or condoning the use of excessive force or other types of officer misconduct. Accordingly, there can be no City liability for an unconstitutional practice or custom.

## V.    <u>CONCLUSION</u>

Based on the forgoing, the Court should grant Defendant, City of Ontario's, Motion for Summary Judgment and/or Partial Summary Judgment and enter judgment in its favor and against Webb.

Dated:     December 15, 2022

Respectfully submitted,

JONES & MAYER

By:*/s/Denise L. Rocawich*

JAMES R. TOUCHSTONE
DENISE L. ROCAWICH
Attorneys for Defendant City of Ontario